In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1516

AISHA PUTNAM,

*Plaintiff-Appellant*,

*v.*

CARAMELCRISP, LLC d/b/a
GARRETT POPCORN SHOPS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cv-02074 — **LaShonda A. Hunt**, *Judge.*

ARGUED DECEMBER 8, 2025 — DECIDED AUGUST 13, 2026

Before ROVNER, JACKSON-AKIWUMI, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge.* While working at Caramel-Crisp, LLC, Aisha Putnam observed, and reported to management, intensifying food safety and quality control violations. In early 2019, Putnam also sent anonymous emails to the United States Food and Drug Administration ("FDA") raising her concerns. Two weeks later, she was terminated. Shortly

thereafter, CaramelCrisp sued Putnam alleging that she stole documents containing trade secrets when she was terminated.

While the trade secrets case was pending, Putnam brought this case alleging that she was terminated in retaliation for her food safety complaints in violation of the Food Safety Modernization Act ("FSMA") and Illinois common law. The district court dismissed the common law retaliatory discharge claim, finding that Illinois courts would not recognize such a claim because Putnam had an adequate statutory remedy under the FSMA. As for the FSMA claim, the court granted summary judgment to CaramelCrisp in part, insofar as Putnam based her claim on her emails to the FDA. But Putnam's remaining theory of retaliation under the FSMA, based on complaints she made directly to CaramelCrisp management, proceeded to trial. The jury returned a verdict in CaramelCrisp's favor, finding that Putnam's complaints were not a contributing factor in any adverse action.

On appeal, Putnam challenges various trial-related rulings, the dismissal of her common law claim, and the summary judgment ruling. We dismiss Putnam's trial-related challenges for failure to provide us with any trial transcripts and affirm the motion to dismiss and summary judgment rulings.

## I

### A

In March 2014, Putnam began working for CaramelCrisp, which does business as Garrett Popcorn Shops, as part of its research and development team. CaramelCrisp manufactures and sells various popcorn and chocolate products in Illinois.

In her eventual role as Director of Research and Development ("R&D"), Putnam was responsible for identifying and developing new product flavors, recipes, processes, and packaging. Putnam mainly worked at CaramelCrisp's offsite kitchen, which housed CaramelCrisp's research and development function and produced popcorn for online orders.

Putnam also had quality assurance ("QA") responsibilities and oversight, which included monitoring compliance with food safety laws. Over the years, Putnam advocated for the company to hire dedicated QA professionals so that she could focus more closely on product research and development. CaramelCrisp agreed to hire dedicated QA staff, but Putnam continued to carry out QA responsibilities.

From the beginning of her employment, Putnam observed and reported a range of food safety and quality control violations to CaramelCrisp management. For example, Putnam complained about inaccurate nutritional labeling, a plan to repackage expiring chocolate, and a leak in the roof and ceiling of the building that could compromise food safety. Despite promises to fix the issues, CaramelCrisp did not address Putnam's concerns.

Putnam says that as she continued to make complaints, CaramelCrisp began "stripping and misrepresenting" her responsibilities, and the workplace became toxic. She says she was "harassed, ostracized, and isolated," "her responsibilities were [] reassigned," she was "excluded from work meetings and insight into hiring," and she was yelled at on several occasions. Eventually, her manager refused to talk to her and left her out of work discussions.

In late February 2019, Putnam sent an anonymous complaint to the FDA from a pseudonymous email account detailing a litany of food safety violations at CaramelCrisp's offsite kitchen. Putnam says that she reached out to the FDA at the recommendation of a food safety consultant contracted by CaramelCrisp. In early March, Putnam sent a follow-up email to the FDA from the same email address noting that she had not received a response. On March 5, 2019, an FDA representative replied, stating that the FDA was reviewing her concerns.

Two days later, Putnam's employment was terminated. CaramelCrisp asserts that it was not aware of Putnam's emails to the FDA or that any employee had complained to the FDA before it made the decision to eliminate Putnam's position. CaramelCrisp claims that several months prior to Putnam's termination, there were internal discussions about the potential elimination of Putnam's position because she was no longer responsible for QA. A new QA specialist had been hired, and according to CaramelCrisp, Putnam was neglecting her R&D responsibilities. But, of course, on summary judgment we credit Putnam's version of the facts and she disputes CaramelCrisp's reasons for eliminating her position, maintaining that QA was always within the scope of her position per her job description and her legal obligation to monitor food safety. The record is not clear as to who at CaramelCrisp decided to terminate Putnam's employment. But the parties do not dispute that Putnam's supervisor did not make the final decision to terminate her.

Upon departing CaramelCrisp, Putnam sent multiple emails containing work documents to her personal email address and took a jump drive with additional information. Two

weeks later, when CaramelCrisp discovered that Putnam had taken this information, it demanded that Putnam delete the information. Putnam deleted the emails, but CaramelCrisp later learned that she still had the jump drive. CaramelCrisp then sued Putnam alleging she misappropriated its trade secrets, including recipes, in violation of their confidentiality and non-compete agreement. *See CaramelCrisp, LLC v. Putnam*, 19-cv-2699 (N.D. Ill. Apr. 22, 2019).

**B**

In March 2020, while the trade secrets litigation was pending, Putnam initiated this lawsuit bringing retaliation claims under the FSMA and Illinois common law.

The district court dismissed Putnam's common law claim under FED. R. CIV. P. 12(b)(6), finding that Illinois courts would not recognize such a claim because she was concurrently pursuing a claim under the FSMA. The court noted that the common law cause of action is intended to provide an otherwise remediless employee with an effective remedy for an illegal discharge, and that Putnam had an adequate remedy under the FSMA.

Later, at summary judgment, the court pared down Putnam's FSMA claim to one theory: that Putnam was fired for making complaints directly to CaramelCrisp. Her theory based on the FDA emails failed because Putnam offered no evidence that any decisionmakers knew of the emails.

On appeal, Putnam says that she also raised an FSMA claim arguing that CaramelCrisp's trade secrets lawsuit was a retaliatory act. The procedural history and the district court's ruling on this theory of retaliation are muddied. To start, Putnam's complaint did not mention the trade secrets

case. And she opposed CaramelCrisp's motion to consolidate the trade secrets case with this one, arguing that "[t]he two cases are fundamentally distinct as they arise under different statutes and involve different issues of fact," and that CaramelCrisp's affirmative defense related to her theft of trade secrets was not enough to litigate the cases together. *See CaramelCrisp, LLC v. Putnam*, 19-cv-2699 (N.D. Ill. Dec. 16, 2020). That said, the parties addressed the trade secrets lawsuit during discovery in this case as it related to Putnam's damages, and CaramelCrisp moved for summary judgment on the theory, to which Putnam responded. The district court, however, did not rule on the theory in its summary judgment order.

The court eventually addressed the retaliation theory when Putnam raised it again in two motions to bifurcate the trial into a jury trial on liability and damages, followed by a bench trial on CaramelCrisp's damages mitigation theory. Putnam argued that CaramelCrisp's after-acquired evidence defense—that Putnam was not entitled to damages because CaramelCrisp would have terminated her anyway after learning she took trade secrets—would prejudice the jury. So, she sought to separate the trial into liability and damage phases before the jury, excluding any discussion of the trade secrets lawsuit, and to hold a separate hearing or bench trial on the after-acquired evidence defense and any reduction in damages, if needed. The court denied the motions, finding that Putnam had not alleged in her complaint that the trade secrets lawsuit was a retaliatory act and that it was "far too late and unduly prejudicial for her to" raise a new theory on the eve of trial.

A jury trial was held in February 2025. Prior to and during the trial, the parties brought multiple motions in limine,

disputed multiple jury instructions, and disagreed on the verdict form. The jury returned a verdict in favor of Caramel-Crisp, finding that Putnam had not established a causal connection between her reporting of dangerous food safety conditions and any adverse action.

**II**

Putnam now appeals, challenging the district court's dismissal of her common law retaliatory discharge claim and its summary judgment ruling. She also challenges the denial of her motion to bifurcate the trial, the exclusion of certain evidence, various jury instructions, and the verdict form.

**A**

We first address Putnam's trial-related challenges. These involve the court's decisions to exclude various pieces of evidence, to quash a subpoena to FDA witnesses, and to deny bifurcation; several jury instructions; and the verdict form. All of these challenges hinge on whether the adverse rulings prejudiced Putnam, which we are unable to assess without the relevant trial transcripts. *See Prude v. Meli*, 76 F.4th 648, 659 n.7 (7th Cir. 2023) (the appellant bears the burden of showing she was prejudiced by an evidentiary ruling); *Artis v. Santos*, 95 F.4th 518, 530 (7th Cir. 2024) ("Inaccurate or confusing [jury] instructions warrant a new trial only if the losing party shows that the error prejudiced him."); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010) ("[W]e will not set aside a verdict unless a party suffered prejudice from the assigned error [in the verdict form]."); *Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791, 828 (7th Cir. 2021) (we review the court's denial to bifurcate the trial for abuse of discretion and "[a]bsent some clear prejudice, we will not fault the court for

attempting to inject some semblance of order into [a] complex case").

Putnam provided only limited pre-trial and trial transcripts, which include discussions about most of the issues she raises, including bifurcation, the jury instructions, evidentiary challenges, and the FDA subpoenas. Putnam, however, did not place into the record complete trial transcripts to show what evidence and testimony was presented to the jury—evidence that is necessary for us to assess whether she suffered any prejudice. We are thus unable to meaningfully review these challenges, and we dismiss them.[1] *See Tapley v. Chambers*, 840 F.3d 370, 375 (7th Cir. 2016) ("Dismissal is appropriate when a deficient record precludes meaningful appellate review.").

**B**

We turn now to the summary judgment ruling. Putnam argues that the district court erred in granting summary

[1] We recognize that we could order Putnam to supplement the record with the transcripts, but we decline to do so when she has had "ample opportunity to correct this deficiency" and has chosen not to do so. *Tapley v. Chambers*, 840 F.3d 370, 375 (7th Cir. 2016); *LaFollette v. Savage*, 68 F.3d 156, 159 (7th Cir. 1995) (dismissing challenges when plaintiffs failed to supplement the record even after the problem was brought to their attention). CaramelCrisp raised the issue in its response (and at oral argument), and Putnam chose not to correct it in reply (while choosing to correct other identified issues). We understand that transcription costs may be prohibitive for some individual litigants like Putnam, and that her choice to limit transcript costs may have contributed to the spottiness of the trial record. But we do not see how we can meaningfully review her trial challenges without understanding the totality of what was put forward before the jury. And Putnam has not explained how we could conduct appellate review of her trial challenges without necessary trial transcripts.

judgment to CaramelCrisp on Putnam's FSMA claim that she was terminated because of her emails to the FDA. Reviewing the district court's summary judgment ruling de novo, *Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025), we find that Putnam did not present any evidence that CaramelCrisp knew of her emails to the FDA and therefore the emails could not have been the cause of her discharge.

The FSMA prohibits employers from retaliating against employees for reporting violations or "reasonably believe[d]" violations of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 399d(a). We have not previously considered what a plaintiff must prove to succeed on a retaliation claim under the FSMA. In the absence of any direction from our court, the district court applied the standard for retaliation claims brought under Title VII, the ADA, and the ADEA. But unlike those statutes, the FSMA falls within "a series of similar whistleblower statutes that protect non-civil-service employees in industries where whistleblowing plays an especially important role in protecting the public welfare." *See Murray v. UBS Sec., LLC*, 601 U.S. 23, 28 & n.1 (2024) (listing FSMA alongside whistleblower statutes in the airline, motor vehicle, consumer products, energy, and securities industries). And the FSMA's statutory language mirrors the requirements of whistleblower retaliation claims under those statutes. Accordingly, to prevail on a retaliation claim brought under the FSMA, a plaintiff must show "that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009) (establishing the framework applicable to whistleblower claims brought under the Sarbanes-

Oxley Act); *see also Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793 (7th Cir. 2018) (citing *Harp*, 558 F.3d at 723).

We zero in on the knowledge element, which requires, "[a]s a threshold matter, [that] the plaintiff [] show that the defendant was aware of the protected conduct." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021) (citation omitted); *see also Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) ("[A]n employer cannot retaliate when it is unaware of any complaints."). Absent such knowledge by the person responsible for the contested decision, the plaintiff lacks the requisite causal link. *See Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011).

Importantly, "[s]peculative assertions about decisionmakers' knowledge are insufficient to establish a genuine dispute about a material fact." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 841 (7th Cir. 2018). It is not enough that a decisionmaker could have, or even should have, known about the protected activity (here, the complaint to the FDA). *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021). Instead, the decisionmaker "must have had actual knowledge of the complaint[] for her decisions to be retaliatory." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). That said, circumstantial evidence may be enough to prove an employer had the requisite knowledge. *See, e.g.*, *Dey v. Colt Constr.*, 28 F.3d 1446, 1458 (7th Cir. 1994). That is, Putnam "need not prove by a preponderance of the evidence that [CaramelCrisp] was aware of [her food safety complaint to the FDA], but [s]he must at least produce evidence that would support an inference that [CaramelCrisp] was so aware." *See Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000); *Luckie*, 389 F.3d at 715.

Putnam faces several problems here. To start, she has not put forth evidence identifying who made the decision to terminate her employment. We know only that CaramelCrisp's HR Director and Putnam's supervisor were involved in conversations over a period of time about the future of Putnam's role. But the record does not reveal who made the decision to fire Putnam, so it is unclear who would need to know about the FDA emails to support the causation element.

Even setting aside this fundamental flaw, Putnam has not presented any evidence that anyone who could have been a decisionmaker knew about her food safety complaint to the FDA. Instead, Putnam argues that CaramelCrisp had constructive knowledge of the emails because a plant superintendent spoke with management about Putnam's emails to the FDA. Such evidence could possibly support an inference that management knew of Putnam's complaints, but it does not exist in this record. Putnam directs us to the testimony of the plant superintendent, who testified that he did not recall any specific conversation, but that he "probably talked" to CaramelCrisp's Senior Director of Operations about some unidentified employee going to management about "rumblings." (R.196-7 at 130:2–12, 134:16–135:21). This is not enough to support a reasonable inference that CaramelCrisp knew of Putnam's email complaints to the FDA. Without any evidence of employer knowledge, the FDA emails cannot form the basis of a retaliation claim, and this theory was properly disposed of on summary judgment. *See Khungar*, 985 F.3d at 578.

**C**

Putnam also argues that the district court erred by failing to adjudicate her retaliation theory premised on CaramelCrisp's trade secrets lawsuit. As an initial matter, Putnam

says that the court's failure to rule on this at summary judgment, despite the parties' briefing the issue, means that it is still live and in dispute. But that is not the case. The court later addressed the theory when ruling on Putnam's motions to bifurcate, finding that Putnam could not amend her complaint with a new factual basis on the eve of trial.

We (like the district court) construe Putnam's attempt to raise this issue—that is, her "attempt to alter the factual basis of [her] claim at summary judgment" and trial—as "an attempt to amend the complaint." *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). Because a plaintiff need not plead legal theories, it follows that generally she "can later alter those theories" at summary judgment, absent any unfair or unreasonable surprise, delay, or difficulty posed to the defendant. *Id.* at 859–60. But when a new argument made at summary judgment "changes the complaint's factual theory," "the plaintiff may be attempting in effect to amend [the] complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims." *Id.* at 860 (citing *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). Since "[t]he district judge who is managing the case is ordinarily in the best position to answer these questions," we review such decisions for abuse of discretion. *Id.*

Here, the district court did not abuse its discretion by refusing Putnam's pre-trial bid to expand the factual basis of her FSMA claim. True, this unpled factual basis of the FSMA claim was explored in discovery in relation to damages, and the trade secrets retaliation theory, briefed at summary judgment, could have been addressed in the court's summary

judgment opinion. But in arguing to include the trade secrets case at trial, Putnam directly contradicted her previous statement opposing consolidation because the cases were "fundamentally distinct as they arise under different statutes and involve different issues of fact." She cannot now claim the opposite. When the new retaliation theory (based on facts that Putnam previously argued were unrelated to her retaliation claim) was raised again pre-trial, the court did not abuse its discretion by not permitting Putnam to articulate a new factual basis of her FSMA claim. *See id.* at 859–60.

**D**

Finally, Putnam argues that the district court erroneously dismissed her Illinois common law retaliatory discharge claim. We review this decision de novo. *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019).

While an Illinois employer may generally fire an employee-at-will for any reason or no reason at all, "[a] discharged employee may sue her employer for the common law tort of retaliatory discharge if her discharge was in retaliation for certain actions that are protected by the public policy of Illinois, including retaliation for complaints about an employer's unlawful conduct." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940–41 (7th Cir. 2002) (citing *Pratt v. Caterpillar Tractor Co.*, 500 N.E.2d 1001, 1002 (Ill. App. Ct. 1986); *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988)). That said, "Illinois courts have hinted in dicta that the claim may [] be rejected if an adequate alternative remedy exists to vindicate the retaliatory discharge or otherwise to deter the activity that is inconsistent with public policy." *Id.* at 943 (emphasis omitted).

The parties dispute whether the FSMA provides Putnam an adequate alternative remedy, but we need not decide the issue because reversal would be fruitless for Putnam. The jury's finding that Putnam's complaints were not (under the FSMA) a contributing factor in her termination dooms any potential common law claim.

To succeed on an FSMA claim, the complaining party must prove that her complaints were "a contributing factor" in her discharge. 21 U.S.C. § 399d(b)(2)(C)(iii). The "contributing factor" causation standard imposes a low threshold. *See Murray*, 601 U.S. at 28, 36–37. The protected activity need not be the sole, primary, or even substantial cause of the adverse action. *Id.*; *see also Addis v. Dep't of Labor*, 575 F.3d 688, 691 (7th Cir. 2009) (a "contributing factor" is "something less than a substantial or motivating one"). Instead, it is sufficient if the protected activity played any role, however minor, in the employer's decision. *Murray*, 601 U.S. at 28, 36–37.

But to succeed on a common law retaliatory discharge claim in Illinois, Putnam would have to prove a higher causation standard—that she "was terminated *because* of" her food safety complaints. *Matros v. Commonwealth Edison Co.*, 136 N.E.3d 83, 107 (Ill. App. Ct. 2019) (emphasis in original) (citing *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1190 (Ill. 2014)). "When deciding the element of causation, the ultimate issue is the employer's motive in discharging the employee." *Michael*, 21 N.E.3d at 1188–89. And a plaintiff cannot "succeed in establishing causation by showing that retaliation was one of several motives leading to [her] discharge." *Matros*, 136 N.E.3d at 107 (emphasis omitted) (citing *Michael*, 21 N.E.3d at 1189; *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 408 (Ill. 1998)).

Because a jury already rejected Putnam's claim under a lower standard of causation, she cannot relitigate whether she could meet the higher standard of causation.[2] "[A] fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." *Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009) (quoting *Arizona v. California,* 460 U.S. 605, 619 (1983), *decision supplemented*, 466 U.S. 144 (1984)). Thus, even when an appellant successfully shows that one claim was erroneously dismissed, we have declined to reverse when a jury verdict on another claim has already determined the same issue. *See id.* at 1072–73 (declining to permit appellant to relitigate an issue that was "completely dependent on a fact he failed to establish" before the jury).

The jury verdict here acts as the "law of the case." *Id.* at 1072–73; *see also Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010). The verdict necessarily decides that Putnam's food safety complaints were not even a minor cause of her termination, let alone the primary cause. Putnam cannot be allowed to relitigate causation when a jury has already rejected it under a less demanding standard. And though when considering a 12(b)(6) motion to dismiss, we credit a plaintiff's allegations over other factual findings, we may decline to remand to promote judicial economy and to avoid a futile remand. *See, e.g.*, *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529,

[2] The parties did not directly raise this argument on appeal though CaramelCrisp hinted at it in arguing that "even if Illinois courts would have allowed a wrongful discharge claim[,] [t]he jury already rejected the notion that Putnam's discharge was the product of retaliation." And it is well established that we can sua sponte decide the case on preclusion grounds "in the interest of judicial economy." *Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (citation omitted).

538–39 (7th Cir. 2011) (declining to remand a discrimination claim erroneously dismissed under Rule 12(b)(6), when surviving discrimination claim had been later dismissed on summary judgment because plaintiff failed to proffer any evidence of race discrimination). Here, we need not decide whether Putnam has a common law retaliatory discharge claim because even if she does, it automatically fails in light of the jury's finding that her termination was not motivated by her food safety reports.

**III**

For the reasons explained above, we DISMISS in part and AFFIRM in part.